UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| KIMBERLY D. DULLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:10-cv-719-SEB-DKL |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY**

Kimberly Dullen ("Dullen") seeks judicial review of a final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her

application for Supplemental Security Income ("SSI") under the Social Security Act ("the

Act").  Dullen filed an application for SSI on September 10, 2003, alleging disability

commencing on the same date.  The application was denied initially on November 5,

2003, and upon reconsideration on January 27, 2004.  Thereafter, Dullen requested,

received, and testified at an administrative hearing, which was held on August 30, 2006.

Administrative Law Judge ("ALJ") Norman Buls issued a decision finding Dullen not

disabled on September 22, 2006.  The Appeals Council affirmed the ALJ's denial on

February 8, 2007.  On August 30, 2007, this court entered judgment in favor the plaintiff

and remanded the case back to the state agency.  On remand, the plaintiff alleged

disability since December 15, 1996.  On June 23, 2009, after another hearing, ALJ

Reinhardt Korte denied plaintiff's application for benefits.  The Appeals Council affirmed, and we now review the ALJ's decision as the final decision of the Commissioner on Dullen's application for benefits.  For the reasons set forth below, the Commissioner's decision is <u>AFFIRMED</u>.

## Dullen's Medical History

At the time Dullen's application for benefits was denied, she was 41 years of age. R. at 113.  She has a high school education and has worked in the past as a beautician.  R. at 162, 165.  Dullen's past work experience also includes working at a restaurant in 2004 or 2005 and as a street sweeper.  *Id*.  She testified that she had to quit both of these jobs after only a short time because of her physical symptoms and the side effects from medications she took to treat those symptoms.  R. at 559.

Dullen's physical ailments began in the mid to late nineties when she was diagnosed with carpal tunnel syndrome.  R. at 297.  She complained of considerable pain and maintained that pain medications prescribed to her provided no relief.  R. at 297-99. In June 1999, a state reviewing physician, Dr. A. Landwehr opined that Dullen could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of about 6 hours in an 8-hour workday, and sit for about 6 hours but noted that she had limitations related to fine manipulation in her right hand.  R. at 280-287.

Dullen sought treatment from Dr. Aldo-Benson in March 2003.  At that time, Dr. Aldo-Benson noted that Dullen displayed eight out of eighteen possible "fibromyalgia

2

tender points." R. at 253. A month later, Dr. Aldo-Benson noted that Plaintiff was still in pain, although both her depression and pain as a result of her fibromyalgia had slightly improved. R. at 252. In July 2003, Dullen returned to Dr. Aldo-Benson with complaints that the medication she was taking for her pain, Naprosyn, was not helping. R. at 251. Dr. Aldo-Benson prescribed a different medication for Dullen and directed that she discontinue using the non-effective one. Dullen also continued to take the medications prescribed for her mental symptoms, Klonopin and Celexa. R. at 251.

From 2003 through 2006, Dullen continued to suffer from fibromyalgia and Dr. Aldo-Benson prescribed other medications as needed for Dullen's pain. R. at 192-93, 196, 250, 347. In March 2006, Dullen returned to Dr. Aldo-Benson for an appointment related to her ongoing fibromyalgia. R. at 347. At that time, Dr. Aldo-Benson noted that Dullen's symptoms seemed to improve with dryer weather and that Dullen had been "more active recently." Specifically she noted that Dullen had to be very active in order to care for her 2-year-old grandson and that she was feeling "emotionally better" and had started going to church. Id. In September 2006, Dr. Aldo-Benson reported that despite Dullen's fibromyalgia, she was "doing well," exercising, and trying to lift weights. R. at 501. At some point in 2006, Dullen's Medicaid was terminated and she could no longer see Dr. Aldo-Benson. R. at 573. In February 2009, Dr. Scott Renshaw (Dullen's treating physician at that time) noted that Dullen's fibromyalgia was permanent and that she was unable to work. R. at 538.

Dullen has also had a history of depression and anxiety. R. at 560-62. In 1999, a

3

state agency physician determined that these conditions were not severe and noted that Dullen denied any ongoing severe impairment.  R. at 288-89.  In December 2001, Dullen underwent a psychiatric evaluation at Universal Behavioral Services after which Dullen was assigned a GAF[1] score of 45, indicating serious symptoms.  R. at 260-66.  She reported at that time that she was no longer depressed but that she had become very irritable and frustrated.  R. at 260.  During subsequent sessions at Universal, Dullen reported that her depression was improving and that she was determined to return to work.  R. at 269, 273.  In February 2002, Dullen underwent an evaluation at Universal in which she was assigned a GAF of 60, indicating that she had moderate symptoms of depression.  R. at 380.  In following months, Dullen denied depression.  R. at 277.  In May of 2002, Dullen was discharged from Universal's care due to noncompliance.  R. at 278.

In October 2003, state reviewing psychologist W. Shipley, Ph.D, determined that Dullen's depression was not severe when analyzed under Listing 12.04.  R. at 197.  Dr. Shipley assessed Dullen's restriction of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace as mild and noted no "episodes of decompensation."  R. at 207.  Dr. Shipley wrote that Dullen was diagnosed with an adjustment disorder but that she indicated that most of her limitations were due to physical problems, as opposed to depression.  R. at 209.

---

[1]The Global Assessment of Functioning ("GAF") is a scale used to rate, among other things, the psychological functioning of adults.

Also in October 2003, Dullen underwent a psychological evaluation with Dr. Greene Ph.D.  R. at 213-15.  Dr. Greene assigned Dullen a GAF of 50 and noted Dullen's fibromyalgia and "adjustment disorder with depression."  Id.  Dr. Green also noted that Dullen's depression appeared to be related to her pain and her inability to work or perform other activities of daily life.  Id.

In September 2008, Plaintiff underwent a psychological evaluation after which Dullen was assigned a GAF of 51 and noted that she had "major depressive disorder, recurrent."  R. at 504-506.  Throughout that fall, Dullen attended individual psychotherapy sessions designed to reduce her unresolved grief issues, reduce her low energy and apathy, reduce her isolation from family and friends, increase communication and reduce her painful emotions, reduce her hopelessness and helplessness, increase her self esteem, and increase her lack of interest.  R. at 511-518. A review of Dullen's treatment in December 2008 indicated that, overall, Dullen had made "slow-moderate progress" and required continued care.  R. at 520.  Dullen's prognosis indicated that she "should be able to make adjustment, verbalize and manage feelings as related to stressors and demonstrate use of constructive coping skills in order to regulate behavior positively, and resolve issues of major depression with interventions of individual, family and group therapy."  Id.  In March 2009, Dullen was discharged after failing to attend scheduled sessions.  R. at 521.  At the time of discharge, Dullen's counseling center diagnosed her with a GAF of 53.  Id.

Additional factual background information will be detailed below, as pertinent.

**Applicable Standard**

A claimant must establish disability in order to be eligible for SSI.  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work."  42 U.S.C. § 1382c(a)(3)(B). To demonstrate physical or mental impairment, the claimant must present evidence of "anatomical, physiological, or psychological abnormalities" by "medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 416.908.  Any physical or mental impairment "must be established by medical evidence . . . not only by [a claimant's] statement of symptoms."  *Id.* The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 U.S.C. § 1382c(a)(3)(G).

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. §§ 404.1520(a)(4), 416.924.  If disability status can be determined at any step in the sequence, an application will not be reviewed further.  *Id.* § 404.1520(a)(4).  At the

first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled.  At the second step, if the claimant's impairments are not severe, then he is not disabled.  A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id.* §§ 404.1520(c), 416.924(c).  At the third step, if the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is disabled.  The Listing of Impairments sets forth medical conditions that the Social Security Administration has deemed *per se* disabling.  *Id.* § 404.1525(a).  If the claimant's impairments do not satisfy a listing,[2] his residual functional capacity ("RFC") will be determined for the fourth and fifth steps of the sequence.  RFC is an assessment of a claimant's ability to work on a regular, continuing basis despite his impairment-related physical and mental limitations.  *Id.* §§ 404.1545, 416.945.  At the fourth step, if the claimant's RFC permits him to perform his past relevant work, then he is not disabled.  Finally, at the fifth step, if the claimant can perform any other work in the relevant economy, then he is not disabled.  The fifth step requires consideration of the claimant's age, work experience, and education (which are not considered at step four), as well as his RFC.

In the foregoing process, the claimant bears the burden of proof at steps one

---

[2] For purposes of the Act, to satisfy a listing, a claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."  20 C.F.R. § 405.1525(d).  This finding will not be reached solely by virtue of a diagnosis.  *Id.*

through four.  The burden then shifts to the Commissioner at step five to demonstrate that

there are jobs the claimant can perform in the national economy.  *Briscoe ex rel. Taylor v.*

*Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).  For a claimant with purely exertional

limitations,[3] the Commissioner may use the Medical-Vocational Guidelines, 20 C.F.R.

Part 404, Subpart P, Appendix 2 (the "grids") to make a disability determination.  The

grids correlate the claimant's age, work experience, education, and RFC with a finding of

"disabled" or "not-disabled."  20 C.F.R. §§ 404.1569, 404.1569a.  If a claimant has non-

exertional limitations or exertional limitations that restrict the full range of employment

opportunities at his RFC level, then the grids may not be used at this step; instead, a

vocational expert must testify regarding the number of existing jobs for a person with the

claimant's particular medical conditions and vocational characteristics.  *Id.*; *Haynes v.*

*Barnhart*, 416 F.3d 621, 629 (7th Cir. 2005); *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir.

1994).  Results from the grids, however, may serve as advisory guidelines in such cases.

20 C.F.R. § 404.1569.

Our standard of review in a case such as this is deferential: courts must uphold

decisions of the Commissioner if his factual findings are supported by substantial

evidence in the record and no material error of law has occurred.  42 U.S.C. § 405(g);

*Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d

467, 470 (7th Cir. 2003).  The Supreme Court has defined "substantial evidence" as "'such

---

[3]Exertional limitations are those which only affect a claimant's ability to meet the
strength demands of jobs.  20 C.F.R. § 1569a(b).

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison

Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This standard requires "more than a mere

scintilla," but less than a preponderance, of the evidence.  *Richardson*, 402 U.S. at 401;

*Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).  This limited scope of judicial

review derives from Congress's intent that the Commissioner, not the courts, make

disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis
> of whether [the claimant] is severely impaired as defined by the SSA
> regulations. Nor may we reweigh evidence, resolve conflicts in the record,
> decide questions of credibility, or, in general, substitute our own judgment
> for that of the Commissioner. Our task is limited to determining whether the
> ALJ's factual findings are supported by the evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  While review of the

Commissioner's factual findings is deferential, review of his legal conclusions is *de novo*.

 *Richardson*, U.S. at 401.

## The ALJ's Decision

At step one of the sequential evaluative process, the ALJ found that Dullen had not

engaged in substantial gainful activity since her alleged disability onset date.  R. at 374.

At step two, the ALJ found that Dullen suffers from the following severe impairments:

fibromyalgia, carpal tunnel syndrome, and depression.  *Id*.  At step three, the ALJ found

that Dullen does not have an impairment or combination of impairments that meets or

medically equals any condition on the Listing of Impairments. *Id*. at 375. The ALJ specifically evaluated Listings 1.02 (major dysfunction of a joint), 11.14 (peripheral neuropathies, 12.04 (affective disorders), and 14.06 (undifferentiated and mixed connective tissue disease). *Id*.

The ALJ then determined Dullen's RFC for purposes of steps four and five of the process. He found that Dullen is capable of performing "light work," with the following restrictions: occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; avoid concentrated exposure to extremes of heat, cold, wetness, humidity, and vibrations; mentally, avoid contact with large groups and have only occasional contact with the general public. R. at 376-77. "Light work" is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; standing and/or walking, off and on, for a total of approximately six hours of an eight our workday; with intermittent sitting. 20 C.F.R. § 416.967(b). At step four, the ALJ found that Dullen is capable of performing past relevant work as a beautician but continued the sequential evaluation (i.e. did not conclude that Dullen was not disabled) because he found it unclear whether that past work was performed at the substantial gainful activity level. R. at 382. At step five, considering Dullen's RFC, age (41 years old when the ALJ decision issued), education (high school education) and lack of transferable skills, and relying on the testimony of the vocational expert, the ALJ found that she can perform a significant number of unskilled

sedentary jobs in the State of Indiana.  Thus, the ALJ concluded that Dullen had not been

disabled within the meaning of the Act at any time relevant to the decision.  Dullen was

therefore denied benefits; and she now asserts several errors in the ALJ's decision.

### Discussion

Dullen has asserted the following in support of her request that we remand the

case: (1) the ALJ's determination that Dullen was not disabled due to fibromyalgia was

not supported by substantial evidence; (2) the ALJ's determination that Dullen's

depression did not meet or equal Listing 12.04 is not supported by substantial evidence;

(3) the ALJ's credibility determination is patently erroneous and contrary to Social

Security Ruling 96-7p; and (4) the ALJ's determination that Dullen could perform

sedentary work was not supported by substantial evidence because of the flawed

hypothetical question the ALJ posed to the vocational expert.  Each of these contentions

is discussed in detail below.

### I.    The ALJ's Determination Regarding Dullen's Fibromyalgia

Plaintiff argues that the ALJ ignored certain of Dr. Aldo-Benson's evaluations that

proved that Dullen was "totally disabled" by her fibromyalgia.  Pl.'s Mem. at 21.

However, the only takeaway from these evaluations is that Dr. Aldo-Benson believed that

Dullen did, in fact, have fibromyalgia.  For example, Dr. Aldo-Benson noted her

impression that Dullen had fibromyalgia following Dullen's November 12, 2003

appointment.  R.at 250.  However, Dr. Aldo-Benson also noted that Dullen was sleeping

fairly well and that she was trying to exercise.  *Id.*  Likewise, Dr. Aldo-Benson noted her

impression that Dullen had fibromylagia after Dullen's August 8, 2005 appointment.  R.

at 192.  Plaintiff's assertion that the ALJ ignored Dr. Aldo-Benson's evaluations is

peculiar given that the ALJ specifically noted her diagnosis of that condition.  R. at 378

("[Dullen's] physician's impression was 'fibromyalgia, doing well.'").  Even more

fundamental, however, the conclusion that Dullen had fibromyalgia is in no way

inconsistent with the *ALJ's* findings.  Despite Plaintiff's statement to the contrary, the

ALJ did not conclude that Dullen did not have fibromyalgia and, in fact, expressly stated

that "although there [was] some question as to whether the claimant actually has active

fibromyalgia, [he gave] her the benefit of the doubt and found fibromyalgia to be a severe

impairment."  R. at 380.  None of the purportedly ignored evidence undermines the ALJ's

conclusion that Dullen was capable of light work despite her fibromyalgia diagnosis.  As

the ALJ noted, Dr. Fischer testified that a diagnosis of fibromyalgia, in and of itself, does

not necessarily preclude an individual's ability to work.  R. at 379, 589.  Because the

evidence that Dullen asserts the ALJ ignored does not undermine the ALJ's conclusion

regarding Dullen's ability to work, we decline to remand the case on this basis.

     Dullen also argues that the ALJ arbitrarily rejected the opinion of Dullen's treating

physician, Dr. Renshaw, because he disagreed with Dr. Renshaw's statement that

"Fibromyalgia is a permanent condition & as a result pt is not able to work."  Pl.'s Mem.

at 23-24.  The ALJ wrote that he disagreed with Dr. Renshaw's assessment based upon

the testimony of Dr. Fischer that this statement is not supported by any objective findings, R. 585-87, and because Dr. Aldo-Benson's evaluations of Dullen's condition did not "reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled."  Furthermore, the ALJ noted that Dr. Renshaw's statement was entirely conclusory and he speculated that the use of the phrase "permanent condition" was used at Dullen's request.  R. at 381.

Ordinarily, a treating physician's opinion regarding the nature and severity of a claimant's condition are given controlling weight, provided that those opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence . . . ."  20 CFR 404.1527(d).  Where an ALJ concludes that a treating physician's opinion is not entitled to controlling weight, he or she still may not summarily reject the opinion.  *Valentine v. Astrue*, 2011 U.S. Dist. LEXIS 68129, at *13 (N.D. Ill. June 24, 2011).  Rather, the ALJ must explain that decision "by discussing the length, nature, and extent of the treating relationship; the supporting evidence in the record; the consistency of the opinion with the record, and the physician's medical speciality."  *Id*; *see also Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).  In other words, the ALJ must provide "good reasons" for his or her decision.  20 C.F.R. § 404.1527(d)(2)).  However, there are certain opinions that a physician may voice that are not medical opinions and are considered "reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e. that would direct the

13

determination of disability."  20 CFR 404.1527(e).

As noted by the ALJ, Dr. Renshaw's statement regarding the permanence of Dullen's condition was at odds with both the findings of Dr. Aldo-Benson (another treating physician) and with the assessment of Dr. Fischer.  *See* R. at 501 (Dr. Aldo-Benson's assessment that Dullen's fibromyalgia symptoms varied and that, at that time, Dullen was attempting to exercise at lift weights); R. at 585 (acknowledging Renshaw's opinion but rejecting it based upon his review of the objective medical evidence); *see also* R. at 581 (non-treating physician Dr. Hutson testifying that there is nothing in the record showing that Dullen cannot do light work).  Furthermore, the statement is entirely unsupported by any explanation from Dr. Renshaw, which the Code of Federal Regulations expressly state bears on the amount of weight an ALJ should give a physician's opinion.  *See* 20 CFR 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion.").  Finally, the regulations also make clear that statements from a medical source that a claimant is "unable to work" is precisely the type of opinion that is reserved for determination by the Commissioner.  20 CFR 404.1527(e)(1).  Because we find that the ALJ's rejection of Dr. Renshaw's statement was reasonable in light of its deficiencies, we will not remand the case on this basis.

## II.      The ALJ's Determination Regarding Dullen's Depression

Dullen argues that the ALJ's decision that her depression did not meet or equal

Listing 12.04 is not supported by substantial evidence.  In support, Dullen maintains that

the ALJ ignored or arbitrarily rejected psychological evaluations performed in October

2003, and in the fall of 2008.  Specifically,  Dullen points to GAF scores of 50 and 51 that

she has been assigned at evaluations in October 2003 and September 2008.  Dr. Olive,

who testified as a mental health expert at Dullen's administrative hearing, testified that

GAF scores in the low fifties indicated moderate impairment that could possibly be

medically equivalent to Listing 12.04.  R. at 603.  However, he testified that he utilized

GAF scores "as an indicator . . . of degrees of disability or lack thereof."  R. at 604.  This

is consistent with the Seventh Circuit's holding that an ALJ is not to base his or her

determination of the extent of a claimant's disability entirely on the claimant's GAF

scores.  *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).  The ALJ acknowledged

the GAF scores that Dullen maintains he rejected, along with a score of 60 in February

2002.  R. at 379-80.  The ALJ adopted Dr. Olive's assessment, however, that these scores

were inconsistent and did not indicate "marked impairment of such a severity to meet or

equal a listing."  R. at 380.  He further noted that the "scores are merely a snapshot of the

claimant's functioning at that moment in time and are not indicative of ongoing

disability."  Id.  As the ALJ noted, the state agency reviewing physician found Dullen to

have no severe mental impairments in 1999, R. at 288-89, Dullen denied a prior history of

mental problems in 2003 and attributed her depression to acute problems, R. at 213, she was assigned a GAF of 60 (indicating moderate symptoms in 2002), R. at 275, and Dr. Olive opined that Dullen's cognitive and social functioning were not markedly impaired. R. at. 605.  In light of this substantial evidence, we find no error in the manner by which the ALJ determined that Dullen's depression was not equivalent to Listing 12.04.[4]

### III.   The ALJ's Credibility Determination

Plaintiff contends that the ALJ's credibility determination was "patently erroneous" for failure to comply with the requirements of SSR 96-7p.  Pl.'s Br. at 28-30. First, relying on *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), plaintiff argues that the ALJ improperly evaluated her testimony by disregarding objective evidence corroborating Dullen's allegations of disability due to pain and mental illness.  Pl.'s Br. at 29.  *Clifford*, however, is materially distinguishable from the present case.  In *Clifford*, the ALJ stated, "in a conclusory manner," that the plaintiff's testimony regarding the limitations placed on her daily activities was unsupported by the medical evidence. *Clifford*, 227 F.3d at 872.  The ALJ did not explain why the objective medical evidence

---

[4]Dullen also argues that the ALJ improperly rejected evidence of her GAF scores because of her treatment compliance failures.  Pursuant to Social Security Ruling 96-7p, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  Although the ALJ noted Dullen's failure to take her medications and to follow treatment goals, we are not convinced that those instances of non-compliance influenced his decision not to find Dullen disabled based on her GAF scores alone.

did not support the plaintiff's complaints of disabling pain. *Id.* Here, the ALJ's
conclusion that Dullen's allegations are not supported by the objective medical findings is
preceded by an extensive explanation. R. at 378-81. Devoting several pages to a
discussion of such evidence, the ALJ provided various reasons for why he discounted the
plaintiff's allegations as noncredible, including but not limited to the following: previous
complaints of pain accompanied by negative test results; medical testimony that Dullen is
capable of performing light work, and the suspect nature of her fibromyalgia diagnosis in
light of the criteria of the American College of Rheumatology. *Id.* Notwithstanding the
fact that the ALJ's discussion of the objective medical evidence is quite comprehensive,
"the ALJ is not required to address every piece of evidence." *Clifford*, 227 F.3d at 872.
Instead, building an "accurate and logical bridge from the evidence to the conclusion," he
must "articulate some legitimate reason for his decision." *Id.* We find that he has
satisfied that requirement.

Second, plaintiff argues that the ALJ's reliance on objective medical evidence in
making a negative credibility determination violated SSR 96-7p. In support of this
contention, plaintiff provided the following excerpt from the Ruling: "An individual's
statements about the intensity and persistence of pain or other symptoms or about the
effect the symptoms have on his or her ability to work may not be disregarded *solely*
because they are not substantiated by objective medical evidence." SSR 96-7p (emphasis
added). The court interprets this as an argument that the ALJ, in assessing Dullen's

allegations of total disability as less than credible, relied exclusively, and thus improperly, on objective medial evidence.  This was simply not the case.  In addition to considering the objective medical evidence, the ALJ considered Dullen's "generally unpersuasive appearance and demeanor while testifying at the hearing"; her daily activities; the nature, location, duration, frequency and intensity of Dullen's symptoms, and non-medical treatment she received, inter alia.  *See generally* R. at 381-82 (discussing factors that precipitate and aggravate Dullen's symptoms, her medications and therapy treatment, and her daily activities including exercising, lifting weights, caring for her grandchildren, ironing clothes, walking her granddaughter in her stroller).

Similarly, the plaintiff argues that the ALJ failed to consider all of the evidence regarding the factors requiring consideration under SSR 96-7p[5] and 20 C.F.R. §§ 404.1529, 416.929.  An ALJ need not discuss every factor listed in 96-7p.  *Stevenson v. Apfel*, 202 F.3d 275 (Table) (7th Cir. 1999).  However, as noted above, the ALJ here considered a litany of non-medically objective evidence that covers most if not all of the factors enumerated in 96-7p.  *See generally* R. at 381-82 (discussing Dullen's daily activities, factors and precipitate and aggravate Dullen's symptoms, Dullen's medications

---

[5]Ruling 96-7p requires an ALJ to consider the following factors (in addition to the objective medical evidence) when making a credibility determination:  (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment other than medication that the individual receives or has received for relief of pain or other symptoms; (6) any other measures the individual uses to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *See* SSR 96-7p.

and her therapy treatment). Mindful that the ALJ need not enter specific findings on each and every factor in Ruling 96-7p, we find that the record reveals that the ALJ properly considered all of the required factors.

We afford an ALJ's credibility finding "'considerable deference,' and [we] overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). We are also mindful that reviewing courts "should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). In light of these principles, we find that the ALJ's credibility determination was supported by substantial evidence.

## IV.    The ALJ's Step Five Determination and the Propriety of the Hypothetical Question Posed to the Vocational Expert

Plaintiff argues that the ALJ failed to incorporate certain limitations into the hypothetical posited to the vocational expert in step five of the analysis. Pl.'s Resp. to Def.'s Mem. at 12. The ALJ asked the vocational expert what jobs would be available in Indiana to a younger individual with a high school education who is restricted to sedentary work but "still ha[d] some additional limitations in there that I'm not taking out." R. at 609).[6] Plaintiff specifically notes that the ALJ did not mention Dullen's

---

[6]This is the substance of the question, generously rephrased. Despite finding the hypothetical question unobjectionable for its failure to expressly include the limitations pertinent to a step-five analysis, the court notes that more clearly articulated questions are helpful for purposes of the record.

19

fibromyalgia or mental impairment.  Pl.'s Br. at 31.

Ordinarily, a hypothetical question to a vocational expert must include all limitations supported by medical evidence in the record.  *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004).  It is important for the vocational expert to understand the full extent of the applicant's disability so that the expert does not declare the applicant capable of undertaking work in the national or local economy that the applicant cannot truly perform.  *Id*.  Consistent with this rationale, an exception exists for cases in which the vocational expert independently learned of the limitations and presumably accounted for them.  *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Young*, 362 F.3d at 1003 ("The hypothetical need not include every . . . limitation, provided that the vocational expert had the opportunity to learn of the applicant's limitations through, for example, an independent review of the medical records or through other questioning at the hearing.").

Here, defendant alleges, and plaintiff does not dispute, that the vocational expert was present for the testimony of the medical experts.  Def.'s Memo at 20; *see* Pl.'s Resp. to Def.'s Mem. at 12-13.  The expert's opportunity to learn of Dullen's limitations through questioning at the hearing imputed to him knowledge of those limitations and salvaged an otherwise deficient hypothetical question.  Thus, we find that the ALJ's step five determination to be supported by substantial evidence.

## Conclusion

For the reasons detailed above, the decision of the Commissioner is <u>AFFIRMED</u>.

Final judgment shall enter accordingly.

      IT IS SO ORDERED.


Date:_____09/30/2011_____

                                         SARAH EVANS BARKER, JUDGE
                                         United States District Court
                                         Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com